IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.M.M.,[1]

              Plaintiff,

vs.                                        Case No. 20-1068-SAC

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

              Defendant.

## MEMORANDUM AND ORDER

On March 6, 2017, plaintiff filed an application for social security supplemental security income benefits.[2] Plaintiff alleged a disability onset date of May 1, 2015. The application was denied initially and on reconsideration. An administrative hearing was conducted on April 4, 2018. The administrative law judge (ALJ) considered the evidence and decided on March 13, 2019 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

---

[1] The initials are used to protect privacy interests.
[2] Obviously, the rules applicable to claims filed before March 17, 2017 are controlling in this case. See Monique M. v. Saul, 2020 WL 5819659 (D.Kan. 9/30/2020)(discussing the change in regulations).

1

I.   STANDARD OF REVIEW

To qualify for supplemental security income benefits, a claimant must establish that he or she was "disabled" under the Social Security Act. 42 U.S.C. § 1381a.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(C)(i).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.   See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  This standard is "not high," but it is "more than a mere scintilla.'" Id. (quoting Consolidated Edison, 305 U.S. at 229).   It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v.

Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II.   THE ALJ'S DECISION (Tr. 15-26).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 16-17). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff has not engaged in substantial gainful activity since March 6, 2017, the date of his application. Second, plaintiff has the following severe impairments: degenerative disc disease; obesity; diabetes mellitus; adjustment disorder with anxiety; personality disorder; and depression. Third, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fourth, plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 416.967(a) except plaintiff can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl. He should not work in direct sunlight. He should avoid

4

concentrated exposure to extreme heat, cold, excessive wetness, vibration, unprotected heights, and hazardous machinery. He can understand, remember and carry out at least simple instructions and non-detailed tasks. He can make simple work-related decisions and adapt to routine, simple work changes. He can perform routine repetitive tasks and he should not have more than occasional contact with the public and coworkers. Finally, based upon the testimony of a vocational expert, the ALJ determined that plaintiff cannot perform his past relevant work but that he could perform other jobs existing in the national economy, such as semiconductor assembler, wire wrapper, and lens inserter.

III. Dr. Berg's opinion

The arguments presented by the parties for and against an award of benefits concern the opinion of Dr. Melvin Berg. Dr. Berg interviewed plaintiff and wrote a consultation report. (Tr. 476-478). He found that plaintiff functions within the low average range of intellectual abilities and that plaintiff's thinking is logical, but mildly disorganized. He stated that plaintiff could process simple information but with frequent errors. Plaintiff could perform serial two subtractions and serial three additions accurately but had to have the instructions repeated to him several times. Plaintiff had a low average score according to the Wechsler norms. His immediate memory for simple information was mildly limited. On several occasions, plaintiff was not able to retain

5

and execute simple instructions without repetition. His immediate memory for more complex information was extremely low and his recall included significant distortions. Plaintiff's long-term memory was intact, but his delayed recall was low average.

Dr. Berg found that plaintiff had a mood disorder, noting plaintiff's longstanding history of mood instability characterized by a high level of irritability, depression with irritability, and impulsivity contributing to ill-judged behavior. He concluded that plaintiff:

> is able to attend to and process simple information, but with some limitations. He can make errors on simple tasks. His ability to persist is likely limited due to his low frustration tolerance and proclivity to become agitated.
>
> [Plaintiff's] ability to accommodate the demands of superficial interpersonal interactions is limited. He has a long history of irritability and conflict with others. In addition, [plaintiff] is anxious around others and avoidant of contact for fear of either being mistreated or lo[]sing control of his temper.
>
> [Plaintiff] can manage his own funds.

(Tr. 478).

In the ALJ's decision, the ALJ stated that Dr. Berg's opinion was "supported by the objective studies and is generally consistent with his own findings and the overall record and is therefore persuasive." (Tr. 24).

IV. Arguments and analysis

Plaintiff contends that the ALJ did not properly formulate and support the RFC stated in his opinion because he did not explain why he omitted two limitations described in Dr. Berg's consultation report: making errors on simple tasks and a limited ability to persist.

This kind of error can require reversal of a denial of benefits. In Martinez v. Astrue, 422 Fed.Appx. 719, 724-25 (10th Cir. 2011), a psychologist's opinion was given great weight by the ALJ, but the ALJ ignored some of the opinion's findings in the RFC assessment. The Tenth Circuit held that the ALJ was required to discuss why some of the findings were disregarded and that the ALJ could not "'pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.'" Id. at 725 (quoting Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) and citing Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007)); see also Wilson v. Colvin, 541 Fed.Appx. 869, 873-74 (10th Cir. 2013); Frantz v. Astrue, 509 F.3d 1299, 1302-03 (10th Cir. 2007).

Defendant argues that everyone makes simple mistakes, so common sense dictates that the ALJ did not need to accommodate plaintiff's error rate in formulating the RFC. Defendant further contends that restricting plaintiff to unskilled work takes

7

sufficient account of plaintiff's limitations in persistence and pace.

The court finds that the ALJ did not adequately discuss Dr. Berg's findings that: plaintiff attended to and processed "simple information but with frequent errors; that plaintiff had to have instructions repeated "several times;" that "on several occasions he was not able to retain and execute simple instructions without repetition;" and that plaintiff "can make errors on simple tasks." (Tr. 477-78). These findings are inconsistent with the RFC which states that plaintiff can carry out simple instructions and non-detailed tasks, make simple work decisions, adapt to simple work changes, and perform routine repetitive tasks. Yet, there is no indication in his decision that the ALJ has rejected any part of Dr. Berg's opinion or findings.

While common sense confirms that everyone makes mistakes, it also confirms that error frequency is an important consideration of functional capacity. The ALJ failed to address Dr. Berg's evidence of plaintiff's error rate in attending to simple tasks or instructions. This warrants a remand for further consideration.

The court reaches the same conclusion regarding the ALJ's consideration of plaintiff's capacity to persist while working. Dr. Berg found that plaintiff's "ability to persist is likely limited due to his low frustration tolerance and proclivity to become agitated." (Tr. 478). This finding was not addressed by

8

the ALJ.  Defendant contends that the ALJ accounted for any restrictions in concentration or persistence by limiting plaintiff to unskilled occupations.  Defendant cites Vigil v. Colvin, 805 F.3d 1199 (10th Cir. 2015) to support this point.  The court finds Vigil distinguishable.

The ALJ in Vigil discussed the evidence of persistence problems and also discussed evidence indicating that plaintiff's thought processes allowed him to perform simple tasks.  Id. at 1203-04.  Here, the ALJ did not discuss the evidence in Dr. Berg's "persuasive" report which described a limited ability to persist. It is also noteworthy that the court in Vigil stated that there may be cases in which a limitation to "unskilled" work does not adequately address a claimant's mental limitations.  Id. at 1204 (citing Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012). In this case, a limited ability to persist may go beyond skill level.  The court finds that restricting plaintiff to unskilled work does not account for plaintiff's limited ability to persist due to a low frustration tolerance and proclivity to become agitated.

This reasoning is supported by the decisions in D.M. v. Commissioner of Social Security Admin., 2019 WL 6327585 *5-6 (D.Kan. 11/26/2019) and Alcantar v. Colvin, 207 F.Supp.3d 1206, (D.Colo. 9/14/2016).  In D.M., the ALJ gave "considerable weight" to a consultative examination report which concluded that the

claimant had difficulty working persistently because of problems with concentration and memory, and that the claimant had a minimal ability to tolerate stress and maintain appropriate relations with coworkers and others because of the claimant's anger and irritability. The RFC limited the claimant to jobs with simple instructions, simple routine tasks, and occasional interaction with the public. The court, however, found that the limitation to simple and routine tasks did not adequately account for the restrictions found by the consulting doctor.

In Alcantar, the ALJ credited a doctor's opinion that the claimant was moderately limited in her ability to, among other things, maintain concentration and attention for extended periods. The ALJ concluded that plaintiff was able to perform the basic functions of unskilled work and to understand, remember and carry out simple instructions. The court held, however, that "[a] limitation to unskilled work . . . is generally insufficient to account for moderate limitations in the ability to maintain concentration, persistence, and pace, even when further refined to require only simple routine, and repetitive tasks." 207 F.Supp.3d at 1212. The court commented that the ALJ should not have purported to adopt a medical source's opinion while failing to explain why potentially significant limitations described in the opinion were not adopted and that this error also infected the

hypothetical propounded to the vocational expert at the hearing. Id. at 1212-13.

V. Conclusion

Because the ALJ did not follow the law in evaluating the medical evidence from Dr. Berg, the court shall reverse the denial of benefits and remand this matter for additional administrative proceedings consistent with this opinion.  This remand is ordered pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk is directed to enter a judgment in accordance with Fed.R.Civ.P. 58.

**IT IS SO ORDERED.**

Dated this 13th day of November 2020, at Topeka, Kansas.

s/Sam A. Crow_____
U.S. District Senior Judge